UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| UNITED STATES OF AMERICA, | CRIMINAL NO. 7:17-CR-6-KKC |
|---|---|
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| JEFFREY ISAAC, | |
| Defendant. | |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on a motion for new trial (DE 120) and motion for judgment of acquittal (DE 121) submitted by Defendant Jeffrey Isaac. In count one of the indictment, Isaac was charged with conspiracy to knowingly and intentionally distribute controlled substances, including pills containing oxycodone, hydrocodone, methadone, and morphine, in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. He was also charged, in count three of the indictment, with knowingly possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). (DE 1.) After a three day jury trial, commencing on January 29, 2018, Isaac was found guilty on both counts. (DE 109.) For the reasons discussed below, Isaac's motion for a new trial and motion for acquittal are denied.

I. Motion for acquittal

Isaac has timely renewed his motion for a judgment of acquittal following the jury's guilty verdict. Fed. R. Crim. P. 29(c). When a defendant challenges the sufficiency of the evidence, the question is "whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Graham*, 622 F.3d 445, 448 (6th Cir. 2010) (quoting *United States v. McAuliffe*, 490 F.3d 526, 537 (6th Cir 2007)). The Court "may not 'weigh the evidence presented, consider the credibility of witnesses, or substitute our judgment

1

for that of the jury.'" *Id.* (quoting *United States v. M/G Transp. Servs., Inc*, 173 F.3d 584, 588–89 (6th Cir. 1999)). The defendant carries a "very heavy burden" and all evidence must be viewed in "a light most favorable to the prosecution, giving the prosecution the benefit of all reasonable inferences from the testimony." *Id.* (first quoting *United States v. Abboud*, 438 F.3d 554, 589 (6th Cir. 2006); then quoting *McAuliffe*, 490 F.3d at 537).

Isaac argues that, with regard to the conspiracy count, the United States failed to prove beyond a reasonable doubt that he had engaged in a conspiracy. Instead, he claims the United States merely proved that he had met with the alleged co-conspirators, talked about common interests, and engaged in similar conduct—including drug trafficking. To sustain a conviction for conspiracy to distribute a controlled substance, the government must prove: "(1) an agreement to violate drug laws, in this case 21 U.S.C. § 841; (2) knowledge and intent to join the conspiracy; and (3) participation in the conspiracy." *United States v. Deitz*, 577 F.3d 672, 677 (6th Cir. 2009) (quoting *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005)). The government is not required to show proof of a formal agreement; a mere "tacit or material understanding among the parties will suffice." *Id.* (quoting *Martinez*, 430 F.3d at 330). Here, the government presented videotape evidence of a drug transaction which occurred on July 1, 2016. In the video, Isaac is seen taking an order for oxycodone tablets, counting the money, and directing his wife, an indicted co-conspirator, to obtain "four dollars and seventeen 30s," to which she replied, "you said seventeen, right." Officer Amos Adkins testified that the paid informant purchased seventeen thirty-milligram oxycodone tablets and that the change he received for the transaction was four dollars. The jury could infer the existence of a conspiracy through this video and testimony which showed "participation in the common plan" to violate drug laws. *Dietz*, 577 F.3d at 677.

With regards to count three of the indictment, Isaac argues that the government failed to prove that he possessed a firearm, or had one in his immediate vicinity, at any time during any

2

of the alleged drug transactions. He admits that the firearms were found in the master bedroom and claims that they were unconnected to the drug trafficking conspiracy, which occurred in the kitchen. Conviction for possession of a firearm in furtherance of a drug trafficking crime requires proof of "a specific nexus between the gun and the crime charged." *United States v. Mackey*, 265 F.3d 457, 462 (6th Cir. 2001). Thus, "the firearm must be strategically located so that it is quickly and easily available for use." *Id*. Other factors which may be considered in establishing that the possession was in furtherance of a drug trafficking crime include "whether the gun was loaded, the type of weapon, the legality of its possession, the type of drug activity conducted, and the time and circumstances under which the firearm was found." *Id*. Here, the evidence showed that Isaac's possessed five loaded pistols within arms-reach of a secret stash of 1,000 dosage units of prescription drugs. Possession of a loaded firearm in the same room as a large quantity of drugs supports the inference that the firearms were strategically located for defense or deterrence purposes. *See United States v. Randolph*, 685 F. App'x 429, 434 (6th Cir. 2017) ("[T]he Ruger was 'strategically located so that it [was] quickly and easily available for use,' being hidden in the same room where some of the drugs were found.") (alteration in original); *United States v. Brown*, 732 F.3d 569, 577–77 (6th Cir. 2013) ("[T]he gun's location under the mattress in the bedroom constituted a strategic location: despite the bedroom's second-floor location" where "the house was small enough so that someone on the first floor could retrieve the gun within ten to fifteen seconds . . . . [and] the gun was found within several feet of $4,700 in cash . . . ."). The testimony by Andy Osborne that Isaac had brandished and threatened a drug customer with a gun later discovered in the bedroom also supports the conviction. Specifically, Osborn claimed that he was present when a routine pill seeker came to purchase controlled substances after 10:00 p.m., which went against Isaac's rule that all drug transactions had to be completed by that time. Isaac claims that no drug transaction took place and that Isaac brandished the weapon to prevent a drug transaction. That claim merely asserts that

3

Osborn was not a credible witness. The Court, however, may not assess the credibility of the witnesses and must instead "draw all available inferences and resolve all issues of credibility in favor of the jury's verdict." *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006) (quoting *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001)). Doing so, the Court infers that the jury believed the testimony of Osborn that the gun was brandished against an individual who was there for the purpose of buying drugs when he did not comply with Isaac's rules.

Isaac also challenges the Court's decision permitting Officer Scotty Hamilton to testify as to what was being said during the recorded drug transactions, that the United States failed to establish a complete chain of custody as to the evidence, that the search warrant was invalid, his right against self-incrimination violated, and that Officer Amos Adkins testified improperly as to his opinion that firearms facilitate a conspiracy to traffic in controlled substances. Those arguments do not go to the sufficiency of the evidence and instead are properly considered on Isaac's motion for a new trial below.

**II. Motion for new trial**

A federal court may "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial may be granted if the "verdict was against the manifest weight of the evidence" or if "substantial legal error has occurred." *United States v. Callahan*, 801 F.3d 606, 616 (6th Cir. 2015) (quoting *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010)). The burden is on the defendant to show that a new trial should be granted. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994). When considering a motion for a new trial based on the argument that the verdict was against the weight of the evidence, the Court "can act in the role of a thirteenth juror and consider the credibility of the witnesses and the weight of the evidence." *Callahan*, 801 F.3d at 616–17 (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)). Such motions, however, "are granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict." *United State v.*

4

*Hughes*, 505 F.3d 578, 593 (6th Cir. 2007) (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)).

Isaac first argues that the weight of evidence did not support his conviction on either count. These arguments are identical to those made in his motion for acquittal. Assuming the role of the thirteenth juror, the Court finds that the evidence supported a conviction and no miscarriage of justice occurred. The United States showed that Isaac was directly involved in four controlled buys of oxycodone from his residence; that during those buys he directed the transactions, and that he actively agreed with his wife to distribute oxycodone. Moreover, the Court also heard videotape evidence of Alyssa Isaac stating that her family's business was selling pills for profit. Officer Adkin's testimony that Isaac possessed loaded firearms stored near his secret stash of pills, and Osborne's testimony of Isaac's brandishing of the pistol against a pill seeker, support his conviction for possession of a firearm in furtherance of a drug trafficking crime.

Isaac's remaining arguments allege that a substantial legal error occurred. First, he objects to Officer Scotty Hamilton's testimony during which he provided his interpretation of what was being said during the drug transactions. Isaac does not point to specific statements, so the Court will instead consider Officer Hamilton's testimony generally. Isaac alleges that the videos were hearsay. That is inaccurate. Isaac's statements on the video were admissible as statements against interest, Fed. R. Evid. 804(b)(3) and his conversations with his wife were admissible as statements made by a co-conspirator in furtherance of a conspiracy, Fed R. Evid. 801(d)(2)(E). Any references made by Officer Hamilton to the confidential informants provided context to the statements made by Isaac and his wife and were therefore not offered for the truth of the matter asserted.

Because Officer Hamilton was not qualified as an expert, his testimony as to his interpretation of what was being said during the recorded transactions is admissible "only when the law enforcement officer is a participant in the conversation, has personal knowledge of the

5

facts being related in the conversation, or observed the conversations as they occurred." *United States v. Kilpatrick*, 798 F.3d 365, 379 (6th Cir. 2015) (quoting *United States v. Peoples*, 250 F.3d 630, 641 (8th Cir. 2001)). That rule is derived from Federal Rule of Evidence 701, which provides:

> If a witness is not testify as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understand the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific technical, or other specialized knowledge within the scope of Rule 702

Fed. R. Evid. 701. When dealing with law enforcement testimony interpreting conservations, the concern is that an agent may provide an interpretation based on his knowledge of the entire investigation, base his testimony on information not before the jury, or that the jury may believe the agent is privy to information that the jury lacks. *Kilpatrick*, 798 F.3d at 380 (citing *United States v. Freeman*, 730 F.3d 590, 595 (6th Cir. 2013)). Those concerns are not present here First, Hamilton was personally involved in the investigation, interacting with the informants, directing their activities, and performing surveillance. This personal involvement was sufficient to establish his ability to interpret the recorded transactions. *Kilpatrick*, 798 F.3d at 381. Second, his testimony neither argued the government's case nor offered interpretations of plain English language. *Id.* Instead, Hamilton identified conspirators voices, provided context for certain exchanges, such as the meaning of "14 5s and 2 bars" or "seventeen 30s," and clarified ambiguous statements based on his underlying investigative knowledge. *Id.*; *see United States v. Edwards*, 707 F. App'x 332, 337 (6th Cir. 2017) (finding testimony was permissible which "interpreted words unique to the investigation and deciphered ambiguous statements in a way that was useful to the jury"); *United States v. Williamson*, 656 F. App'x 175, 187 (6th Cir. 2016) (finding officer's lay testimony which "explain[ed] to the jury whom the voices on the calls

6

belonged to, and what the investigation had revealed their roles in [the criminal] enterprise to be."). Similarly, Hamilton was permitted to summarize portions of the recording that could not be conveniently examined by the jury due to their length. *Id.* at 383 (citing Fed. R. Evid. 1006) ("The proponent may use a summary . . . of voluminous . . . recordings . . . that cannot be conveniently examined in court . . . ."). Finally, Hamilton did not base his testimony on any specialized knowledge, instead relying on his "personal knowledge of a particular investigation." *Kilpatrick*, 798 F.3d at 384.

Next, Isaac argues that the United States failed to establish a complete chain of custody for evidence presented at trial. Isaac does not identify which evidence he alleges lacked a chain of custody. Officers Hamilton and Adkins testified that they maintained a chain of custody of the oxycodone purchased during the controlled buys and the firearms. Because there is no evidence of tampering with evidence on the record, the Court must presume the officers properly discharged their duties. *United States v. Allen*, 106 F.3d 695, 700 (6th Cir. 1997) ("Where there is no evidence indicating that tampering with the exhibits occurred, courts presume public officers have discharged their duties properly.") (citing *United States v. Aviles*, 623 F.2d 1192, 1197–98 (7th Cir. 1980)). Moreover, "absent a clear abuse of discretion, 'challenges to the chain of custody go to the weight of the evidence, not its admissibility." *Id.* (quoting *United States v. Levy*, 904 F.2d 1026, 1030 (6th Cir. 1990)).

Isaac reasserts his pre-trial motions that his Fourth and Fifth Amendment rights were violated. He does not present any new argument that his rights were violated and therefore the Court's prior opinion and order resolves this issue. (DE 104.)

Finally, Isaac objects to Officer Amos Adkin's opinion testimony as to the propensity of firearms to facilitate or further a drug trafficking conspiracy. He claims this opinion testimony invaded the role of the jury. It is well established, however, that officers may testify as expert witnesses as to their knowledge of the characteristics of criminal activity. *See United States v.*

7

*Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004) ("Our court regularly allows qualified law enforcement personnel to testify on characteristics of criminal activity, as long as appropriate cautionary instructions are given, since knowledge of such activity is generally beyond the understanding of the average layman.") (quoting *United States v. Thomas*, 99 F. App'x. 665, 668–69 (6th Cir. 2004)). This includes testimony that "firearms play a role in drug trafficking activity." *Id.*; *see United States v. Ham*, 628 F.3d 801, 809 (6th Cir. 2011) (affirming allowing expert law enforcement testimony "that persons involved in drug trafficking almost always have guns because '[i]t's an illegal business, and the only way they can protect this illegal business is through violence or the threat of violence.'"). Accordingly, Isaac is not entitled to a new trial.

### III. Conclusion

For the reasons set forth above, the Court **HEREBY ORDERS** that Defendant Jeffery Isaac's motion for new trial (DE 120) and motion for judgment of acquittal (DE 121) are **DENIED**.

Dated May 11, 2018.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY