UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION -- PIKEVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 7:17-06-KKC-1 |
| **Plaintiff,** | |
| V. | **OPINION AND ORDER** |
| JEFFREY ISAAC, | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Defendant Jeffrey Isaac's ("Isaac") motion for compassionate release under 18 U.S.C. 3582(c)(1)(A). (DE 206). Following a three-day trial, a jury found Isaac guilty of conspiring to distribute Schedule II controlled substances and possession of a firearm in furtherance of a drug trafficking crime. On May 24, 2018, this Court sentenced Isaac to a total term of 144 months of imprisonment to be followed by three years of supervised release. (DE 149, 151). Isaac promptly appealed, but was unsuccessful. (DE 175, 180).

Isaac is currently incarcerated at the Federal Medical Center (FMC) in Lexington, Kentucky. Through counsel, he now moves for compassionate release, expressing concerns about the possibility of contracting the novel coronavirus—again—given his medical conditions. The United States concedes that Isaac has fulfilled the exhaustion requirements, but otherwise objects on the merits. (DE 214). For the reasons below, the motion (DE 206) will be **denied**.

Prior to the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), the Court could not grant a motion for compassionate release unless the motion was filed by the director of the Bureau of Prisons (BOP). *See* 18 U.S.C. § 3582(c)(1)(A) (2017). If the defendant himself

filed such a motion, the court could not grant it. But, the First Step Act amended section 3582(c)(1)(A) to allow the court the flexibility to grant a motion filed by the defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier " 18 U.S.C.A. § 3582(c)(1)(A); PL 115-391, 132 Stat 5194, § 603 (Dec. 21, 2018) (emphasis added). The Sixth Circuit has determined that the occurrence of one of these two events is a "mandatory condition" to the Court granting relief on a motion for compassionate release filed by the defendant, and if the government "properly invoke[s]" the condition, the Court must enforce it. *United States v. Alam*, 960 F.3d 831, 833-34 (6th Cir. 2020). As previously stated, the United States does not contest the exhaustion of the defendant's administrative remedies. Thus, because Isaac has met the mandatory condition, the Court proceeds to the next step.

The compassionate-release statute permits this Court to "reduce the term of imprisonment" and also to "impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment." 18 U.S.C.A. § 3582(c)(1)(A). However, under the applicable provision of Section 3582(c)(1)(A), the Court may only grant this relief if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C.A. § 3582(c)(1)(A)(i).

Notably, the statute does not define "extraordinary and compelling"; however, the Sentencing Commission's applicable policy statement to Section 3582(c)(1)(A) sets forth the circumstances under which extraordinary and compelling reasons exist for modifying a sentence; one of which is the defendant's medical condition. The defendant's asserted condition must include one of two things: a "terminal illness" or a serious physical or mental impairment "that substantially diminishes the ability of the defendant to provide self-care

within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. Manual § 1B1.13 cmt. n.1. The other factors allow for the consideration of the defendant's age— including the percentage of his or her sentence that has been served— and whether the defendant's spouse, registered partner, or caregiver of his minor children has become incapacitated. *Id.*

Isaac strongly urges the Court to grant him compassionate release due to his long list of health conditions and his fear of contracting COVID-19— for a second time. Prior to his arrest, in July 2016, Isaac

> had a history of multiple severe underlying medical conditions…, including asthma, bradycardia, chronic ischemic heart disease, COPD (chronic obstructive pulmonary disease), gross hermaturia, hyperlipidemia, hypertension, chronic lower back pain, a nodule in his lung, macular degeneration, chronic kidney disease, [and] rheumatoid arthritis[.]

(DE 206-1 at 3). Prior to his sentencing, in May 2018, Isaac was allegedly still "in poor health[.]" (DE 153, ¶ 62). Apart from some of the conditions outlined above, Isaac also

> suffer[ed] from allergies, arthritis …, calcium deposits, and chronic back and spinal pain… [two] heart attack[s] … [and], has previously been treated for emphysema, and … surgery for a torn bicep[.]

(*Id.*). Further, Isaac was diagnosed with COVID-19 earlier this year. (DE 206-1 at 2). He claims he was hospitalized for approximately one month, and placed on a ventilator for 12 days. (*Id.*).

Given all that Isaac suffered, or continues to suffer, he claims his illnesses " 'substantially diminish[] …[his] ability … to provide self-care' " (citing U.S.S.G. § 1B.13, cmt. 1(A)); however, the BOP refutes this. (*Id.* at 5; *see also* DE 213). The medical summary they provided reflects that Isaac is not in "significant distress" and there is also no reason to believe "he is unable to perform the activities of daily living." (DE 213). Thus, notwithstanding Isaac's contention, the Court is not convinced that he has a permanent impairment that substantially diminishes his ability to provide self-care within the prison

environment, for he has not provided the Court with *any* evidence showing otherwise. Further, Isaac has readily admitted that he does not have any terminal illnesses (*see* DE 206-1 at 5). Therefore, for all of these reasons, the Court finds that Isaac has not established extraordinary and compelling reasons warrant his release.

Indeed, Isaac mentions—and the Court is aware—that the policy statement includes a catchall provision, providing that undefined "other reasons" *may* exist that constitute an extraordinary and compelling reason to modify a sentence. Despite this, the Court advises Isaac that these "other reasons" may only be "determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 n. 1 (D). This Court has no authority to find "other reasons" may justify a sentence reduction beyond those delineated in the policy statement. *See United States v. Lynn*, No. CR 89-0072-WS, 2019 WL 3805349, at *2 (S.D. Ala. Aug. 13, 2019).

Even if extraordinary and compelling circumstances *did* exist, the Court must still consider whether "the factors set forth in section 3553(a) to the extent that they are applicable" support the requested sentence reduction. 18 U.S.C. § 3582(c)(1)(A); s*ee United States v. Spencer*, No. 20-3721, 2020 WL 5498932, at *2 (6th Cir. Sept. 2, 2020). These factors include, among other things: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the sentencing range for the applicable category of offense; and (3) the need for the sentence imposed to adequately deter criminal conduct, to protect the public from the defendant's further crimes, and to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a). The court must also find that the defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. Manual § 1B1.13 (referencing 18 U.S.C. § 3142(g)).

Here, the Court does not find that the factors under 18 U.S.C. § 3553(a) support Isaac's

release. He was convicted of serious and violent offenses; namely, conspiring with others to transport and obtain controlled substances from Detroit, Michigan, and bring them back to Floyd County, Kentucky for distribution. Along with his co-defendants, Isaac distributed over 116.5 kilograms of marijuana in just over one month. (DE 153 at 9). At his residence, police located 1,579 doses of controlled substances, 13 guns (including rifles and shotguns), and $853.00 cash. (*Id.* at 6-7).

Isaac claims he is an " 'overall good inmate' " (*see* DE 206-1 at 4), but based upon the record before it, the Court cannot find that Isaac would not pose a danger to the safety of any person or the community if he were to be released. For starters, Isaac has only served a small fraction of his 144-month-long sentence (*see* DE 151 at 2). In addition, his drug trafficking offenses suggest that he poses a continued danger to the safety of the community. *See United States v. Stone*, 608 F.3d 939, 947 n.6 (6th Cir. 2010) ("[D]rug trafficking is a serious offense that, in itself, poses a danger to the community."). Thus, considering the need for his prison term to deter future criminal conduct, promote respect for the law, and provide just punishment, release is simply not appropriate.

Finally, to the extent that Isaac requests that the Court order that he serve the remainder of his prison term on home confinement, this Court has no authority to do so. The Bureau of Prisons is the entity that has the authority to designate the place of a prisoner's imprisonment, not the court. 18 U.S.C. § 3621(b); *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015).

For all of these reasons, the Court **HEREBY ORDERS** that Isaac's motion (DE 206) is **DENIED**.

Dated November 4, 2020



Karen K. Caldwell
KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

Page **5** of **5**